David T. HARGETT, Plaintiff–Appellant,

v.

NATIONAL WESTMINSTER BANK, USA, Gordon Oliosi and Roger Goldman, Defendants–Appellees.

No. 403, Docket 95–7266.

United States Court of Appeals, Second Circuit.

Argued Nov. 21, 1995.

Decided March 19, 1996.

Dan Cherner, Law Offices of Frederick K. Brewington, New York City (Frederick K. Brewington, of counsel), for Plaintiff–Appellant.

Kenneth J. Kelly, Epstein, Becker, & Green, New York City, for Defendant–Appellee.

Before CARDAMONE, WALKER, and PARKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff David T. Hargett appeals from a judgment of the United States District Court for the Southern District of New York (Dominick L. DiCarlo, *Chief Judge of the International Court of Trade,* sitting by designation), following a jury verdict for Defendants that resulted in dismissal of the complaint in which Hargett had alleged that he was discriminatorily terminated from his employment. On appeal, Hargett alleges that the district court erred by: (1) issuing an errone-

ous jury instruction on the issue of "pretext" by informing the jury that it could consider the employment positions held by others in determining whether those individuals were "similarly situated" to Hargett; (2) refusing to issue a "mixed motives" jury instruction; and (3) refusing to admit into evidence a document allegedly written by a witness who was unavailable at trial.

For the reasons that follow, we affirm.

## BACKGROUND

On November 13, 1991, Hargett, an African–American male, was hired as "Vice President, Area Business Director," by National Westminster Bank USA ("National Westminster" or the "Bank") at an annual salary of $95,000. Hargett was hired away from a $70,000 per year position at Citibank, a competitor of National Westminster. Less than five months later, on April 6, 1992, National Westminster terminated Hargett's employment. The Bank's stated reason for Hargett's dismissal was that he had permitted a female stripper to perform at a monthly branch manager's meeting over which he presided, apparently in celebration of another employee's birthday and service anniversary. The meeting at which the stripper performed was held on February 11, 1992 during business hours in a conference room on National Westminster's premises.

There was evidence at trial that on at least two prior occasions, other National Westminster employees held functions where strippers performed. On one of these occasions, a male stripper appeared at a National Westminster branch after normal banking hours. The employee responsible for arranging the function, a birthday celebration for another employee, was given a verbal warning but was not terminated from her employment. On another occasion, a going-away party for an employee, a female stripper performed at a different National Westminster branch after normal banking hours. No one connected with that function was disciplined in any manner.

## DISCUSSION

The essence of Hargett's complaint was that he was terminated as a result of racial discrimination, in violation of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991), and of N.Y Exec. Law § 296(1)(a).

## I. The Pretext Charge

 It is well-settled law that a plaintiff in an employment discrimination case

has the burden[, first] of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection [or termination]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (internal quotations and citations omitted). "In order to establish a prima facie case of racial discrimination in firing in violation of ... Title VII, the plaintiff must show that she belongs to a protected class, that she was qualified for the position, that she was discharged, and that her discharge occurred 'in circumstances giving rise to an inference of racial discrimination.'" *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 464 (2d Cir.1989) (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir.1987)). Notwithstanding the three-part test for determining disparate treatment, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

In this case, Hargett made out a prima facie case of employment discrimination. Defendants then offered a non-discriminatory reason for terminating him—namely that he had allowed a female stripper to perform at a function during business hours on National Westminster premises and that he had attended the function. Hargett was there-

fore correctly afforded the opportunity to prove that the non-discriminatory reason was in fact pretextual.

 A plaintiff in a discrimination action may establish that the reason articulated by a defendant for termination of plaintiff's employment is a pretext and that race, in fact, did play a part in the decision to terminate by proving that "similarly situated" white employees were treated more favorably than he. *See Henry v. Daytop Village, Inc.*, 42 F.3d 89, 96–97 (2d Cir.1994). To that end, Hargett pointed to evidence that at least two other National Westminster employees hired strippers to perform at functions on bank premises, that both of these employees were white, and that neither of them was fired for his/her conduct. Despite the fact that both individuals held positions lower down in the National Westminster corporate hierarchy than he, Hargett argues that these individuals were "similarly situated" to him because they engaged in the same conduct. Hargett therefore argues that Judge DiCarlo erred in instructing the jury that it could consider employment position in determining whether certain National Westminster employees were "similarly situated" to Hargett. Judge DiCarlo instructed the jury as follows:

> It is for you to decide if the other individuals were similarly situated to the plaintiff. You may consider the positions held and the conduct in question in determining if the individuals were similarly situated. If you believe by a preponderance of the evidence that plaintiff has proven that other similarly situated employees did commit similar acts and were not terminated, then you may find defendants' reason pretextual.

In rejecting Hargett's proposed charge, which would have eliminated reference to the positions held by himself and the two other National Westminster miscreants, Judge DiCarlo stated that he believed the issue to be one of first impression, and concluded that employment position was a factor for the jury to consider along with the conduct in question in deciding whether the persons were "similarly situated."

Hargett contends that this case is not one of first impression and that the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), ruled out consideration of position within the company in deciding whether persons treated differently were "similarly situated." We disagree. The Supreme Court never addressed this question in *McDonnell.* The *McDonnell* Court stated only:

> [R]espondent must ... be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness ... were nevertheless retained or rehired.

411 U.S. at 804, 93 S.Ct. at 1825. As Defendants accurately note, this statement does not imply that the determination of whether acts are of "comparable seriousness" requires a myopic examination of the acts alone without regard to context or surrounding circumstances. Nothing in *McDonnell* precludes a finding that identical acts undertaken by persons of differing authority or in differing circumstances are in fact dissimilar. One can easily posit a situation where language that might be tolerated in a back office would be unacceptable at a reception desk. In a similar vein, a corporate officer who is expected to lead others might well be held to a higher standard of conduct than a lower-level functionary.

In *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), the Supreme Court stated that:

> precise equivalence in culpability between employees is not the ultimate question: as we indicated in *McDonnell Douglas,* an allegation that other employees involved in acts against [the employer] of *comparable seriousness* ... were nevertheless retained ... is adequate to plead an inferential case that the employer's reliance on his discharged employee's misconduct as grounds for terminating him was merely a pretext.

*Id.* at 283 n. 11, 96 S.Ct. at 2580 n. 11 (internal quotation and citation omitted). Nothing in this language precludes a finding that similar acts committed by employees

occupying different levels of authority are in fact not of "comparable seriousness."

Defendants argue that:

Plaintiff's argument is that the standards of conduct as to all actions are identical for a bank's chairman, trust officers, personnel officers, drivers, cashiers and janitors, and thus, the jury cannot make any distinction as to the standards of appropriate conduct based on the individual's level in the corporate hierarchy. This contention, which defies common sense, is an erroneous statement of law.

We agree. Requiring higher-ups to conform to a higher standard of decency is not contrary to established law and does conform with common sense. It is significant to note, in this respect, that National Westminster warned its employees, via its employee handbook ("NatWest & You"), that "[s]enior officers and certain employees . . . may be subject to more specific procedures or standards."

We also note that the instruction permitting the jury to consider employment position did not necessarily disfavor Hargett. In support of his claim of race-based discrimination, Hargett argued at trial that Defendant Oliosi, who is white and held a superior position to Hargett, was not terminated despite having approved the stripper for the February 11, 1992 meeting. Allowing the jury to consider Oliosi's employment position could therefore have benefitted Hargett in his claim of racial discrimination.

Finally, we observe that Judge DiCarlo did not hold that, as a matter of law, the individuals with whom Hargett compared himself were not "similarly situated" to him. The district court simply instructed the jury that it could consider the positions held by those individuals in making its determination on the "similarly situated" issue.

## II. The "Mixed Motives" Charge Request

Hargett also argues that the district court erred in declining to give a "mixed motives" charge. We disagree.

In an employment discrimination case, a "mixed motives" charge is proper where there is evidence to show that an employment determination was "the product of a mixture of legitimate and illegitimate motives." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 247, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989). We have previously stated:

[I]f the plaintiff presents evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, *and that evidence is sufficient to permit the factfinder to infer that that attitude was more likely than not a motivating factor in the employer's decision,* the jury should be instructed that if it does draw that inference the plaintiff is entitled to recover unless the employer has established by a preponderance of the evidence that the employer would have taken the same action without consideration of the impermissible factor.

*Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992) (emphasis added).

Hargett alleges that a "mixed motives" charge was required based upon two items of evidence: (1) his own testimony with respect to his conversation with Defendant Goldman, the superior officer who had hired Hargett, and (2) the testimony of an assistant vice president and branch manager of National Westminster, an employee inferior to Hargett. It is plain to us that the testimony of the latter was insufficient to require a "mixed motives" instruction. With respect to Hargett's termination, one of National Westminster's assistant vice presidents stated only that "I thought there was a lot more to it than just—I thought there was a lot more to it than what had happened." There is no evidence to indicate that this employee was making reference to Hargett's race. Moreover, the employee had no involvement in the decision to terminate Hargett and thus the basis of whatever she "thought" could only be speculation.

Hargett's testimony regarding his pre-employment conversation with Goldman presents a closer question. Hargett testified that Goldman told him that National Westminster was "very vanilla" and that Hargett "may experience some unfair treatment based on [his] race." Goldman denied making these

statements. Furthermore, Hargett himself testified that Goldman stated that he would protect Hargett should Hargett be subjected to any unfair treatment based on his race. Based on this evidence, we cannot conclude that the district court abused its discretion in finding that a "mixed motives" instruction was not required.

### III. The Handwritten Document

Hargett contends that the district court erred in ruling inadmissible a handwritten letter which allegedly was written by a vice president and branch manager at National Westminster who was unavailable as a witness at trial. The letter, which was unaddressed and unsigned, in relevant part stated as follows: (1) the author suggested to Hargett that there be a stripper at the February 11, 1992 function; (2) Hargett responded that because there would be mixed company at the meeting, the female managers should be contacted for permission; (3) the author contacted these managers, as well as other female visitors, and obtained their permission to proceed with the stripper; (4) the stripper arrived at the meeting clothed in a French maid's outfit, performed for approximately ten minutes, and was left wearing only a bikini-type outfit; (5) during the course of the stripper's performance, all of the women in attendance left; (6) the stripper then left and the meeting continued until approximately 6:30 p.m., at which time everyone left; and (7) the author personally paid $80.00 for the stripper and although he expected to be reimbursed by the other managers, he subsequently forgot to collect from them.

Hargett argues that the letter should have been admitted as an exception to the hearsay rule, under Federal Rule of Evidence 803(6). That rule permits the admission of hearsay evidence that is in the form of

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or

data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Fed.R.Evid. 803(6).

Alternatively, Hargett argues that the letter should have been admitted pursuant to Federal Rules of Evidence 804(a) and 804(b). Rule 804(a) sets forth the definition of "unavailability of a witness." It is uncontested that the alleged author of the document was unavailable. Rule 804(b) enumerates several categories of testimony that are not excluded by the hearsay rule if the declarant is unavailable as a witness. Rule 804(b)(3) describes one such exception, in relevant part, as follows:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

Rule 804(b)(5) describes another exception, in relevant part, as follows:

> A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

The district court refused to admit the document into evidence under either Rule 803(6) or Rule 804(b). Judge DiCarlo stated that the document was inadmissible

hearsay and that Hargett had failed to establish a foundation for its admission as a business record. The determination of whether a record is sufficiently reliable to warrant its admission is within the sound discretion of the district court, *United States v. Strother*, 49 F.3d 869, 874 (2d Cir.1995), and a district court's findings as to whether the prerequisites for admissibility have been met will not be overturned absent a finding that they are clearly erroneous, *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir.1994).

 In this case, the district court did not abuse its discretion in refusing to admit the evidence under Rule 803(6). The district court's finding that Hargett failed to establish a foundation for the document is supported by the record and is not clearly erroneous. Oliosi, the only witness questioned about the document, testified that he did not recall the circumstances under which the document was created. Furthermore, the district court did not abuse its discretion in refusing to admit the evidence under Rule 804(b). There was no showing that the document was contrary to the author's pecuniary or proprietary interest. If anything, the language of the document would seem to be self-serving. Finally, the interests of justice were not frustrated by the district court's refusal to admit the document which contained little information not already in the record.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby affirmed.