**Arthur SYKES, Plaintiff,**

v.

**MT. SINAI MEDICAL CENTER, Defendant.**

**No. 95 Civ. 5920 (CBM).**

United States District Court, S.D. New York.

Sept. 4, 1996.

---

Stephen C. Jackson, New York City, for Plaintiff.

Marshall & McEvoy by Rory C. McEvoy, New York City, for Defendant.

---

1. It appears that prior to the incident, Rivera had asked that plaintiff not supervise him and that management provide him with a white or Latino

## AMENDED MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff, a black male, was terminated from employment with defendant under circumstances which, he alleges, indicate that the basis for this termination was his race. Plaintiff also alleges that his termination was retaliatory in nature for plaintiff having complained about unfair treatment of blacks at the worksite. Defendant has moved for summary judgment dismissing these claims. As more fully set forth below, plaintiff's allegations in opposition to the motion are sufficient to establish a genuine issue of material fact to withstand summary judgment on the race discrimination claim. On the other hand, defendant's motion related to plaintiff's claim of retaliatory discharge is granted because plaintiff has failed to raise a genuine issue of material fact with regard to this claim.

## FACTS

Plaintiff Arthur Sykes (hereinafter "plaintiff") was terminated from his position as supervisor in the Traffic and Information Department of the Mt. Sinai Medical Center (hereinafter "defendant"). Prior to his termination, plaintiff had been employed by defendant for fourteen years. (*See* Affidavit of Stephen C. Jackson, Esq., dated July 22, 1996, (hereinafter "Jackson Aff."), Exh. A (plaintiff's statement pursuant to Rule 3(g) of the Southern District of New York), at ¶ 1.) Although his service with defendant was marred by apparently poor relations with the individuals he supervised, (*See* Affidavit of James H. Walls, dated June 12, 1996, (hereinafter "Walls Aff."), Exhs. 2–14 (reports documenting poor relations between plaintiff and co-workers)), he generally received satisfactory reviews. (*See* Jackson Aff.Exhs. D–I (employee evaluation reports pertaining to plaintiff).)

On July 26, 1994, plaintiff was in his office with several co-workers when one of plaintiff's supervisors, Albert Rivera, a Latino male with whom plaintiff had poor relations[1]

---

supervisor. It appears that defendant's response was to tell Rivera that plaintiff would remain

and who, at the time, had been employed by defendant for approximately 15 months, (Walls Aff. at ¶ 20), walked into plaintiff's office uninvited. An argument ensued wherein plaintiff and Rivera exchanged words and apparently threatened each other. (Jackson Aff.Exh. C (Plf.'s Dep.), at pp. 216–226.) Soon after the argument, defendant investigated the incident and Rivera was given a light sanction because, it is alleged, he had no record of similar conduct in the past. (Walls Aff. at ¶ 20.) On the other hand, on August 4, 1994, because of plaintiff's higher position and purported history of poor relations with co-employees, plaintiff was terminated. (*Id.*) Plaintiff argues that he was ultimately terminated from his employment based on his race because he was fired although Rivera, a Latino male, was retained.[2] (*See* Jackson Aff.Exh. C (Plf.'s Dep.) at 216–226.)

## ANALYSIS

### I. SUMMARY JUDGMENT STANDARD.

A motion for summary judgment shall only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). When considering a motion for summary judgment, the court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).[3]

### II. PLAINTIFF'S DISCRIMINATORY DISCHARGE CLAIM.

#### A. Plaintiff's Burden Under Title VII.

Title VII of the Civil Rights Act of 1964 makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ..." 42 U.S.C. § 2000e–2(a)(1) (hereinafter "Title VII"). Based upon the evidence adduced at trial, the court considers plaintiff's allegations under the familiar three-step burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), and further described in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 505–512, 113 S.Ct. 2742, 2746–2748, 125 L.Ed.2d 407 (1993).

In *McDonnell Douglas,* the Court established "an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases." *Hicks,* 509 U.S. at 506, 113 S.Ct. at

Rivera's supervisor. (Jackson Aff.Exh. B (Dep. of James H. Walls), at pp. 46–47.)

2. Plaintiff argues that other incidents which apparently occurred also tend to show a racial animus in the office which support his theory. For example, plaintiff was one of two supervisors out of six that was black (the other four were Latino) (Jackson Aff.Exh. C (Plf.'s Dep.) at 46). The court need not address the import of these and other allegations at this time because, as more fully set forth herein, at least one genuine issue of material fact has been established which warrants denial of the motion for summary judgment.

3. In the instant case, apart from the introduction of copies of several of the employee evaluations plaintiff received from defendant (Jackson Dep. Exhs. D–I), plaintiff has only submitted excerpts from depositions which, it is alleged, establish that there are genuine issues of material fact which warrant denial of defendant's motion. Although defendant argues that plaintiff's opposition to the motion is insufficient in form as a matter of law (Def.'s Rep.Mem. in Further Supp. of the Mot. for Summ.J. at 3 n. 1), as the plain language of Rule 56 makes clear, such deposition evidence is acceptable in opposition to a motion for summary judgment. In addition, defendant argues that plaintiff's cursory statement pursuant to Local Rule 3 of the Southern District of New York, and his failure to submit a memorandum of law in opposition to the motion—choosing instead to submit only his Pre-Trial Memorandum of Law—warrant granting the motion on default, as is permitted under Local Rule 3. (Def.s' Rep.Mem. at 2–5.) Because the court considers plaintiff's submissions acceptable—albeit, barely—there are no grounds to grant the motion on default.

2746 (footnote omitted). Under the standards set forth in *McDonnell Douglas*, plaintiff must first prove by a preponderance of the evidence a *"prima facie"* case of racial discrimination by proving: 1) that he is a member of a protected class (i.e., that he is black); 2) that he was qualified for the position to which he applied; 3) that he was rejected or terminated in circumstances giving rise to an inference of discrimination. 411 U.S. at 802, 93 S.Ct. at 1824. The *prima facie* burden serves an "important function" in Title VII litigation, *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94, because it "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

Once plaintiff has established a *prima facie* case of discrimination based on race, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). *See also Hicks*, 509 U.S. at 506–507, 113 S.Ct. at 2746–2747. At this stage, defendant " 'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747, (quoting *Burdine*, 450 U.S. at 254–255 and n. 8, 101 S.Ct. at 1094 and n. 8). *See also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995) (same).

Once defendant carries this burden of production, plaintiff must show that the reasons articulated for the adverse decision were pretextual and that plaintiff was the victim of discrimination. *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747. As reiterated by the Court in *Hicks*, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Id.*

(quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093) (alteration in original).

Plaintiff's burden at this stage can be met by presenting "additional evidence showing that 'the employer's proffered explanation is unworthy of credence,' " *Cronin*, 46 F.3d at 203 (quoting *Burdine*, 450 U.S. at 256), or "by reliance on the evidence comprising the prima facie case, without more." *Cronin*, 46 F.3d at 203 (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749). *See also Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994). The *Hicks* case and Second Circuit case law make clear that disbelief of defendant's articulated reason for the adverse employment action is sufficient to support, although it would not necessarily compel, a finding for plaintiff. *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749; *Cabrera v. Jakabovitz*, 24 F.3d 372, 385 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). *See also, Binder v. Long Island Lighting Co.*, 57 F.3d 193, 200 (2d Cir.1995) (holding trier of fact may "generally infer discrimination when it finds that the employer's explanation is unworthy of credence."); *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994) (holding that a "finding of pretextuality allows a juror to reject a defendant's proffered reasons for a challenged employment action and thus permits the ultimate inference of discrimination."); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 142 (2d Cir.1993) (holding plaintiff's ultimate burden of proof can be met by "combining" proof submitted in its *prima facie* case with "evidence that defendant's proffered reasons for its acts were false."), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170 (2d Cir.1993) (holding defendant's proffer of a false reason for employment action sufficient basis for trier of fact to find that such action was "motivated by an improper discriminatory intent.").

**B. Plaintiff's *Prima Facie* Case.**

Plaintiff can show that: (1) he is a member of a protected class (i.e., that he is black); (2) he was qualified for the position to which he

applied [4]; and (3) that, because he was discharged while Rivera was retained, he was terminated under circumstances giving rise to an inference of discrimination. *de la Cruz v. N.Y. City Human Resources Admin., Dept. of Social Services*, 82 F.3d 16, 20 (2d Cir.1996) (recognizing inference of discrimination in disparate treatment as between Latino and black workers).

### C. Defendant's Non–Discriminatory Reason for Plaintiff's Termination.

Defendant argues that it terminated plaintiff because of the altercation with Rivera and his prior history of poor relations with other employees. The production of such a purportedly non-discriminatory reason for the discharge at the summary judgment stage is problematic because plaintiff's introduction of evidence that Rivera, who is not black, was retained while plaintiff was terminated is clearly the type of evidence that can establish pretext. *McDonnell Douglas* 411 U.S. at 804, 93 S.Ct. at 1825 (recognizing that evidence that white employees who engaged in acts of "comparable seriousness" is "[e]specially relevant" to the issue of whether employer's stated reasons for the termination were pretextual); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 2580 n. 11, 49 L.Ed.2d 493 (1976) (same); *cf. de la Cruz, supra*, 82 F.3d at 20.

In response, defendant argues that Rivera's treatment cannot be compared to that of plaintiff because as employees of different levels of authority they are not similarly situated: i.e., defendant expects a higher level of professionalism from its supervisors than its lower-level employees. (Walls Aff. at ¶ 20.) In support of this argument defendant cites the following precedent from other jurisdictions: *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir.1993) (holding that for purpose of establishing *prima facie*

case of discrimination higher level employee who was terminated for engaging in certain conduct may not compare treatment he received to that of lower level employee who had engaged in similar conduct but who was retained by employer); *Larson v. Koch Ref. Co.*, 920 F.Supp. 1000, 1005 (D.Minn.1996) (same); *McKnight v. SuperAmerica Group/Ashland Oil Co.*, 888 F.Supp. 1467, 1482–1483 (E.D.Wis.1995) (same); *Castleberry v. Boeing Co.*, 880 F.Supp. 1435, 1441 (D.Kan.1995) (same); *Chamberlain v. Bissell, Inc.*, 547 F.Supp. 1067, 1078 (W.D.Mich. 1982) (same). (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. at 22–23.)

Recent Second Circuit case law makes clear, however, that it is the law of this Circuit that whether plaintiff and Rivera are similarly situated for the purpose of establishing whether or not defendant's articulated reason is pretextual is a question squarely within the province of the trier of fact. In *Hargett v. National Westminster Bank, USA*, 78 F.3d 836 (2d Cir.1996), the Second Circuit affirmed the lower court's use of a jury instruction in a Title VII case which permitted the jury to " 'consider' " whether plaintiff and other employees who had engaged in similar conduct were similarly situated for the purpose of establishing if defendant's purported reason for terminating plaintiff—that he held a different position than those other retained employees—was pretextual. *Id.* at 838 (quoting jury instruction). Although this case, which was before the Court of Appeals after trial, was in a procedurally different posture than the matter *sub judice*, the law of this Circuit, as described by court in *Hargett*, is apparent: when an employer's purportedly non-discriminatory reason for taking an adverse employment action against an employee hinges upon the employer's alleged treatment of higher

---

**4.** Although defendant argues that plaintiff repeatedly verbally abused his supervisees, his annual reviews, as submitted by plaintiff in opposition to the motion, generally show that his overall performance was satisfactory. (Jackson Aff.Exhs. D–I.) As is well-recognized, plaintiff's burden at this stage of the litigation is "not onerous." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *See also, Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir.1994) (noting de minimis burden at *prima facie* stage of Title VII litigation). Indeed, plaintiff need only show that he "possesses the skills necessary for performance of [the] job," *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir.), *cert. denied*, 439 U.S. 984, 99 S.Ct. 576, 58 L.Ed.2d 656 (1978), which plaintiff has done.

level employees with greater scrutiny than lower level workers, the question of whether such a justification is merely pretextual is one for the trier of fact to determine.[5]

 Accordingly, there is at least one genuine issue of material fact concerning whether defendant's articulated reason for terminating plaintiff is pretextual: i.e., whether plaintiff has shown that a "similarly situated" employee, who is not black, was retained for engaging in the same or similar conduct as plaintiff while plaintiff was terminated. A genuine issue of material fact thus exists with regard to an "essential element"[6] of plaintiff's case: i.e., whether defendant's disparate treatment of plaintiff and Rivera was non-pretextual because of the different positions these two individuals held. Although a plaintiff must prove that defendant's articulated reason for terminating plaintiff was not only pretextual, but that it was a pretext *for discrimination, Hicks,* 509 U.S. at 506–507, 113 S.Ct. at 2746–2747, as is well-settled in the Second Circuit, the trier of fact can "generally infer discrimination when it finds that the employer's explanation is unworthy of credence." *Binder, supra,* 57 F.3d at 200 (citations omitted). Accordingly, the trier of fact's determination on this genuine issue of material fact is critical to the outcome of the case and thus summary judgment is unwar-

ranted. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. PLAINTIFF'S RETALIATORY DISCHARGE CLAIM.

In addition, defendant has moved for summary judgment on the claim of retaliatory discharge because: 1) plaintiff neglected to raise the claim before the Equal Employment Opportunity Commission (EEOC); 2) that any claim based on events occurring in 1991 is time-barred; 3) that plaintiff cannot establish a *prima facie* case of retaliatory discharge because the allegations that plaintiff complained of disparate treatment of blacks are too remote in time from the discharge to establish a causal connection between the two incidents. (Def.'s Mem. in Supp. of Mot. for Summ.J. at 29–30.) Regardless of whether the basic elements of the claim *are* contained in the EEOC complaint,[7] it does not appear that plaintiff can make out a *prima facie* claim of retaliatory discharge.[8]

 To establish a *prima facie* case of retaliation under Title VII, plaintiff must prove: that he was engaged in protected activity under Title VII, that he suffered adverse action, and that a causal connection

---

5. Moreover, in at least one of the cases cited by defendant it was apparent that the employer in that case had a genuine policy of holding higher level employees to a more exacting standard than lower level workers. *Castleberry v. Boeing Co.,* 880 F.Supp. at 1441 (noting "plaintiffs acknowledge there is evidence [employer] expected a higher standard of conduct from management"). Here, even assuming that the court could rule as a matter of law that an employer in a Title VII case may avoid liability altogether simply by alleging that it discriminates between different levels of employees, defendant has failed to make any material showing that it maintains such a policy, choosing rather to allege simply that it expects more from higher level workers. (*See* Walls Aff. at ¶ 20 (making conclusory and unsupported statement that "supervisors are held to a higher standard of conduct than are non-supervisory personnel").) The validity of this assertion, made through an affidavit without any supporting documentation whatsoever, obviously hinges upon the credibility of the affiant: a matter clearly for the trier of fact.

6. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

7. It appears that neither defendant nor plaintiff annexed a copy of the EEOC complaint to their submissions on the instant motion. Accordingly, the court cannot address the first two of the three bases for dismissing the retaliatory discharge claim raised by defendant.

8. Plaintiff has been highly ambiguous in his assertions regarding this claim. Although the claim of retaliatory discharge appears in the Joint Pre–Trial Order filed by the parties (*See Id.* at 9, ¶ 9 (setting forth plaintiff's contention of fact that his termination was "unlawful and discriminatory, based on his race and color, *and in retaliation for having complained about the discriminatory statements that he was subjected to by his subordinates* ") (emphasis added)), in subsequent correspondence with the court plaintiff's counsel has admitted that plaintiff "did not allege a retaliatory charge." (Letter of Stephen C. Jackson, Esq., dated July 26, 1996, at 2.) It is asserted, however, that plaintiff's "termination was fueled, in part, by plaintiff's prior complaints of favoritism shown Hispanic employees." (*Id.*)

exists between the two. *See, e.g., Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995). In such situations, the causal connection between the adverse action and the protected activity can be shown through indirect evidence, such as close proximity in time between the protected activity and the adverse employment action. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.1980) (discussing proof for retaliation claim under Title VII). Like with a discriminatory discharge claim, plaintiff's burden on this claim at this stage of the litigation is "de minim[i]s." *Tomka, supra*, 66 F.3d at 1308 (citation omitted and alteration in original).

■ A review of plaintiff's opposition to the instant motion reveals that plaintiff has neglected to oppose defendant's contentions in any way. Because of plaintiff's failure to engage defendant's motion on this issue he is unable to sustain his burden of establishing a genuine issue of material fact with regard to a *prima facie* case of retaliatory discharge because, at a minimum, he has not shown any causal connection whatsoever between the protected activity—his complaints to management concerning treatment of blacks at the worksite—and the discharge. Plaintiff has simply not come forward with any evidence or allegations even raising the possibility of such a connection.[9] By failing to raise any allegations that could establish a causal connection between plaintiff's purported protected activity and the discharge, plaintiff has failed to establish a genuine issue of fact with regard to an "essential element" of his *prima facie* claim of retaliatory discharge, *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at

2552, and thus this claim should be dismissed.

## CONCLUSION

For the reasons set forth above, with regard to plaintiff's race discrimination claim, defendant's request for summary judgment is denied; with regard to the claim of retaliatory discharge, the motion is granted.

---

**9.** Although plaintiff has failed to argue that there is a temporal connection between the discharge and complaints he had raised with management concerning the purported disparate treatment of blacks at the worksite, any such argument would be unavailing because no temporal connection exists. Although the Second Circuit stated clearly in *Tomka, supra*, that a close correlation in time between the protected act and the purported retaliatory treatment "supports an inference of discrimination sufficient to establish a prima facie case," *Id.*, 66 F.3d at 1308 (citations omitted), because plaintiff cannot even remember when such events occurred, (*See* Jackson Aff. Exh. C (Plf.'s Dep.) at 60 (meeting following up on complaints to management occurred "maybe

a year or two before I was terminated"); *Id.* at 257 (admitting that plaintiff did not "remember the exact year" of the complaint)), and it appears from plaintiff's evidentiary submissions that they occurred in December of 1991 (over two-and-a-half years prior to his discharge) (*See* Jackson Aff. at Exh. J.), the court finds that as a matter of law no close proximity in time exists between the complaints and the discharge sufficient to establish a *prima facie* case of retaliatory discharge. *See, e.g., Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 110–111 (1st Cir.1988) (affirming trial court's dismissal of claim of retaliatory discharge where protected activity occurred over two years prior to the adverse employment action).