Arthur SYKES, Plaintiff,

v.

MT. SINAI MEDICAL CENTER,
Defendant.

No. 95 Civ. 5920 CBM.

United States District Court,
S.D. New York.

June 25, 1997.

Stephen C. Jackson, New York City, for Plaintiff.

Marshall & McEvoy by Rory J. McEvoy, New York City, for Defendant.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Defendant in this case has moved for summary judgment against plaintiff, who alleges that he was terminated from his employment with defendant because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*. For the reasons set forth below, plaintiff has failed to establish a genuine issue of material fact with regard to the reason for his discharge, and defendant's motion is therefore granted.

## FACTS

Prior to his termination on August 4, 1994, plaintiff had been employed for fourteen years by defendant as a supervisor in the Traffic and Information Department (the "Department"), which was responsible for transporting patients as well as laboratory specimens throughout the hospital. (Pl.Dep. at 16, 18–20.) Supervisors such as plaintiff were in charge of managing the dispatchers, who assign calls and trips, and transporters, who actually transport the patients and the laboratory specimens. (Pl.Dep. at 19–20.)

The evidence submitted to the court indicates that from early in his employment with defendant, plaintiff was the subject of complaints from numerous employees and staff members of many different racial and ethnic groups. For example, in June of 1984, twenty one Department employees, including five African Americans, submitted a petition complaining that plaintiff was rude and disrespectful of employees. (Pl.Dep. at 114–22.) One of plaintiffs supervisors, Michael J. Connelly, sent plaintiff a letter soon thereafter informing him that the employees had complained of his behavior and was told that future incidents could result in "further action." (Pl.Dep. at 114–15, Def.Ex. 16.)

In October of 1991, an African–American employee complained that plaintiff had spoken to her in an abusive and unprofessional manner, in response to which plaintiff's immediate supervisor, James H. Walls, himself an African–American, wrote a letter to plaintiff, telling him that he had a reputation for verbally abusing departmental employees and staff and that if he wished to continue in his supervisory capacity, he had to cease behaving in this manner. (Walls Aff.Ex. 3, Def.Ex. 22.)

Plaintiff again appeared to be the subject of a complaint in May of 1993, when a white nurse filed a Report of Episode of Harassment against plaintiff, complaining that he demanded in an intimidating fashion that a particular wheelchair be given to him. (Walls Aff.Ex. 3.) Walls responded with another memorandum, dated June 10, 1993, in which he was again warned to "refrain from ... aggressiveness when dealing with employees and staff." (Def.Ex. 29.)

Finally, in August of 1993, a West Indian nurse stated that plaintiff had treated her very rudely, in response to which defendant claims that Walls sent plaintiff a letter dated August 24, 1993, which reads in relevant part:

Your actions continue to be unprofessional and objectionable in spite of the many conferences we have had on this subject, and you continue to be unaware of your perceived threatening and intimidating style. This memo serves as a last attempt to have you cease and desist from this

unacceptable behavior. You are advised that any continuance of such behavior will lead to serious disciplinary steps including but not limited to a shift change, suspension or termination.

Although plaintiff testified at his deposition that he never saw this memo, he also indicated at that time that the nurse had written a letter of complaint about the incident which he must have seen and that Walls did speak to him about it. (Pl.Dep. at 177, 180–81.) Plaintiff now claims that he has no recollection of the incident. (Pl.Mem. at 8.)

Additionally, each of plaintiff's performance evaluations throughout this period, though generally satisfactory, are replete with criticisms of plaintiff's interpersonal skills. (Defs.Exs. 9–14.)

The actual incident which ultimately led to the firing of plaintiff took place on July 26, 1994. (Pl.Dep. at 203.) At that time, plaintiff was conducting a meeting in the supervisors' office, which was used by five of the seven supervisors in the Department. (Pl. Dep. at 204–05.) In the middle of the meeting, a dispatcher, Albert Rivera, entered the room and spoke to another supervisor about getting access to an oversized wheelchair.[1] Plaintiff had earlier complained to Walls about the fact that Rivera had a habit of entering the supervisors' office for no legitimate purpose, and Walls had apparently instructed Rivera not to enter the office unless he had a reason for being there. (Pl.Dep. at 203–204; 208–09.) Plaintiff admitted that he was annoyed by Rivera's entry given the latter's alleged history, and he instructed one of the persons with whom he was having the meeting to close and lock the door behind Rivera as Rivera was leaving. (Pl.Dep. at 218.) Rivera then became antagonistic, refused to leave, and kept his foot in the door so that plaintiff was unable to close it. Some yelling ensued, after which Rivera finally left the office and plaintiff closed the door. (Pl. Dep. at 219–20.)

However, plaintiff was still angry, and within a few minutes, he left the office and entered the dispatch area in order to resume the argument with Rivera. (Pl.Dep. at 222–24.) Rivera suggested that they go to Central Park to fight with each other, to which plaintiff responded that he would rather go to Madison Avenue, which was closer[2]. (Unempl.Tr. at 21–22.) The two were on their way to Madison Avenue when they were stopped by other employees. (Unempl.Tr. at 22.) Almost immediately thereafter, both Rivera and plaintiff were suspended pending an investigation during which the two of them, as well as numerous other witnesses to the event, were interviewed and asked to submit written statements about what they had seen. (Walls Aff. at 48.) Following this investigation, Walls recommended that plaintiff be terminated because of his past history of aggressive behavior and because the situation could have been avoided if he had not followed Rivera into another area to confront him a second time. (Walls Tr. 63–65.) Walls' recommendation was approved by Connelly, and plaintiff was terminated on August 4, 1994. (Def.Ex. 38.)

Rivera, however, was given only a three day suspension as well as a warning that any further misconduct would result in his termination. (Walls Aff. at ¶ 20.) Plaintiff claims that the fact that he was terminated while Rivera, who had only worked for defendant for 15 months, was suspended demonstrates defendant's proclivity to favor Hispanic employees over African–American employees. Defendant claims that the evidence makes unmistakably clear the fact that plaintiff's discharge had nothing to do with race but rather stemmed from his abusive and disrespectful behavior.

In order to support his claim that defendant's reason for discharging him is pretextual, plaintiff has introduced statistical evidence which he says establishes the fact that defendant discriminates against African–American employees in disciplinary proceed-

1. According to plaintiff himself, oversized wheelchairs could not be released from the Department without the permission of a supervisor. (Pl.Dep. at 326–27).

2. Plaintiff had given sworn testimony regarding this incident on November 1, 1994 before the New York State Department of Labor, Unemployment Insurance, Administrative Law Judge Section. Portions of his testimony during this proceeding are cited as "Unempl. Tr.".

ings. Moreover, he submits affidavits from various employees and former employees of defendant, all of whom claim that defendant discriminates against African–Americans and some of whom insist that it was Rivera who provoked the incident and that he, and not plaintiff, should be held accountable.

## PROCEDURAL HISTORY

Plaintiff filed this suit on August 8, 1995, alleging both race discrimination and retaliatory discharge. Following the initial close of discovery on May 3, 1996, defendant filed a motion for summary judgment which, by opinion and order dated September 5, 1996, was granted as to the retaliatory discharge claim and denied as to the discrimination claim. *See Sykes v. Mt. Sinai Med. Ctr.*, 937 F.Supp. 270 (S.D.N.Y.1996) (Motley, J.). Despite the partial denial of summary judgment, however, the court indicated at a pretrial conference held on September 5, 1996, that "this claim of discrimination against African–Americans seems very thin" (Sept. 5 Tr. at 34) and thus reopened discovery in order to allow plaintiff to determine whether or not there were other cases where Hispanics were favored over African–Americans in disciplinary proceedings and whether or not a statistical showing of disparate treatment could be made. On April 7, 1997, the date that trial was scheduled to begin, it appeared to the court that the additional discovery did not support the plaintiff's contentions, and defendant was given leave to file this second motion for summary judgment.

## ANALYSIS

### I. Summary Judgment Standard

"Uncertainty as to the true state of any material fact defeats [a summary judgment] motion." *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128, 1132 (2d Cir.1989). It is not the role of the trial court to weigh the evidence presented or to resolve any factual issue, but rather it is the court's job to determine whether, after the parties have conducted adequate discovery, any such issues remain to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A factual issue is unresolved if a reasonable factfinder could determine it in favor of either party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511; *Gibson*, 892 F.2d at 1132. Moreover, [t]he court must view the inferences to be drawn from the facts in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The nonmoving party may defeat the motion for summary judgment by producing sufficient facts to establish a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "The non-moving party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided [in F.R.C.P. 56], must set forth sufficient facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n. 20, 90 S.Ct. 1598, 1609 n. 20, 26 L.Ed.2d 142 (1970) (indicating that the last two sentences of Rule 56(e) were added to prevent a party from relying solely upon its pleading in resisting a motion for summary judgment).

Finally, in an employment discrimination case, "[a] trial court must be cautious about granting summary judgment to an employer when ... its intent is at issue." *Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir.1994); *see also Montana v. First Federal Savings & Loan*, 869 F.2d 100, 103 (2d Cir.1989). "Because writings directly supporting a claim of intentional discrimination are rarely, if ever, found among an employer's corporate papers, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo*, 22 F.3d at 1224.

### II. Plaintiff's Discriminatory Discharge Claim

### A. Plaintiff's Burden under Title VII

In order to establish a *prima facie* case of discriminatory termination of employment

under Title VII, the court must apply the familiar three-step burden shifting analysis set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253–57, 101 S.Ct. 1089, 1093–96, 67 L.Ed.2d 207 (1981), further described in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 505–512, 113 S.Ct. 2742, 2746–50, 125 L.Ed.2d 407 (1993), and most recently clarified by the Second Circuit in the case of *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir.1997)(en banc).

■ According to *McDonnell Douglas*, plaintiff must first prove by a preponderance of the evidence a prima facie case of racial discrimination by proving three elements: (1) membership in a protected class, (2) qualification for the position, and (3) termination in circumstances giving rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1094. The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Nonetheless, as the Second Circuit has stated, the plaintiff's burden of establishing a *prima* facie case has often been described as "minimal." *Fisher*, 114 F.3d at 1334–35 (*citing Hicks*).

■ Once plaintiff has established his *prima facie* case of discrimination based on race, "the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *Fisher*, 114 F.3d at 1335–36. *See also Hicks*, 509 U.S. at 506–507, 113 S.Ct. at 2747. At this stage, the defendant "must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S.

at 254–255 and n. 8, 101 S.Ct. at 1094–95 and n. 8). *See also Cronin v. Aetna Life Ins., Co.*, 46 F.3d 196, 203 (2d Cir.1995)(same).

■ "It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of *production* to the defendant, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093) (alteration in *Hicks*). "Any legitimate, nondiscriminatory reason will rebut the presumption triggered by the *prima facie* case" and the defendant does not need to "persuade the court that it was actually motivated by the proffered reason in order to nullify the plaintiff and obligate him to satisfy the burden of proof." *Fisher*, 114 F.3d at 1335–36.

■ Once defendant carries this burden of production, the *McDonnell Douglas* framework "simply drops out of the picture" and both the Supreme Court and the Second Circuit warn against its subsequent resurrection. *Hicks*, 509 U.S. at 510–11, 113 S.Ct. at 2749; *Fisher*, 114 F.3d at 1336. "In particular, the presumption of discrimination that was raised upon a showing of the prima facie case no longer operates." *Fisher*, 114 F.3d at 1336.

■ In order to sustain his burden of persuasion at this stage, plaintiff must be afforded an opportunity to prove that the reasons articulated for the adverse decision were a pretext for discrimination. *Burdine*, 450 U.S. at 256–57, 101 S.Ct. at 1095; *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir.1985). The plaintiff, however, must satisfy two different elements: first, that the legitimate, nondiscriminatory reason was not the true reason for the adverse employment decision, and second, that race was. *Hicks*, 509 U.S. at 507–08, 113 S.Ct. at 2747. Moreover, if "the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject," summary judgment could be granted on the

basis of the nondiscriminatory reasons proffered by defendant. *Cronin,* 46 F.3d at 203.

## B. Plaintiff's *Prima Facie* Case.

Plaintiff can clearly establish the first element of his *prima facie* case; as an African-American, he is a member of a protected class. Defendant, however, argues that he cannot show the second and third elements; namely, that he was qualified for his position, and that he was terminated under circumstances that demonstrate an inference of discrimination. As to the question of whether the defendant was qualified, the court holds that plaintiff has introduced enough evidence to make this a genuine issue of material fact. The annual performance appraisals of plaintiff, while indicating that plaintiff had serious problems with his interpersonal skills, nonetheless rated his job performance as satisfactory. This in itself is enough to preclude summary judgment on the issue of qualification. *See de la Cruz v. N.Y. City Human Resources Admin., Dept. of Soc. Serv.,* 82 F.3d 16, 21 (2d Cir.1996) (" [A] performance evaluation that is positive overall is sufficient to withstand summary judgment at the *prima facie* stage of analysis.")

 The court also holds that the discharge took place under circumstances that could lead to an inference of discrimination. After all, there was an altercation between two employees of defendant, one of whom was Hispanic and the other African-American. The fact that the Hispanic was given a suspension while the African-American was terminated establishes the necessary inference. As was made clear in Sec. II.A *supra,* the burden which the plaintiff must carry in order to make out his *prima facie* case of discrimination is *"de minimis." Gallo,* 22 F.3d at 1225.

## C. Defendant's Non-Discriminatory Reason for Plaintiff's Termination.

 Defendant maintains that even if plaintiff can make out a *prima facie* case, defendant has come forward with legitimate, nondiscriminatory reasons for plaintiff's discharge to which there is no genuine issue of material fact. Defendant argues that the state of the evidence is such that any rational factfinder would be compelled to find that defendant terminated plaintiff after the July 24, 1996 incident because (1) as a supervisor, he was expected to behave in a more professional manner, and (2) he had a history of poor relations with other employees. Defendant argues that although Rivera was also guilty of misconduct, the fact that he had no history of such misconduct, along with the fact that he was not similarly situated to plaintiff because he was not a supervisor, made suspension a more appropriate penalty for him.

The court has previously held that "whether plaintiff and Rivera are similarly situated, is a question squarely within the province of the trier of fact." *Sykes,* 937 F.Supp. at 274. However, defendant's evidence regarding plaintiff's history of poor relations with other employees, more clear now than it was when the first summary judgment motion was filed, is compelling indeed. Defendant has shown no less than four separate incidents which resulted in plaintiff's being warned regarding his behavior. Moreover, the final warning which Walls claims that he sent plaintiff states that it is a "last attempt" to get plaintiff to improve his behavior and that any continuance of that behavior would result in his termination. Finally, each of plaintiff's performance evaluations from 1988 to the time that he was terminated in 1994 (six appraisals in all) make reference to plaintiff's poor interpersonal skills.

Plaintiff argues that defendant's evidence is not to be trusted. Thus, for example, plaintiff claims that the "final warning" allegedly sent by Walls on August 24, 1993 was not signed by plaintiff or another employee in plaintiff's presence as required by defendant's own internal regulations and that plaintiff denies having received it. Plaintiff did acknowledge at his deposition, however, both that Walls had spoken to him about the incident and that he must have seen the letter written by the complaining nurse which led to Walls' alleged "final warning" memorandum. Now that a summary judgment motion has been filed, plaintiff claims that he does not recall the incident at all. As the Second Circuit made clear some time ago, a party cannot create an issue of fact

simply by submitting an affidavit which contradicts prior sworn testimony. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969).

Moreover, even if the August 1993 incident were to be ignored by the court, there were three other letters which plaintiff admits receiving which criticized his behavior. These, along with the performance evaluations, which plaintiff obviously saw, demonstrate that plaintiff was on notice regarding his treatment of other employees.

Thus, it should be clear from the foregoing that plaintiff cannot avoid summary judgment by relying on his *prima facie* case alone. The fact that an African–American employee was terminated following an altercation with a Hispanic while the Hispanic was retained may be sufficient to create an inference of discrimination at the *prima facie* level, but defendant has introduced enough evidence regarding plaintiff's history of troubled relations with employees to make it impossible to raise a genuine issue of material fact simply by relying on the fact that the two employees were not given the same discipline. This is especially so when the person making the decision to terminate plaintiff and retain Rivera was himself an African–American. In fact, precisely because reliance on his *prima facie* case would hardly be sufficient, this court reopened discovery on September 5, 1996 so that plaintiff would have an opportunity to gather evidence of other cases of disparate treatment in disciplinary proceedings and to collect any statistical evidence which could help establish a general bias on the part of defendant in favor of Hispanics.

However, despite the reopening of discovery, plaintiff has failed to show anything which would allow a rational juror to find that defendant's proffered reasons for terminating his employment were a pretext for discrimination. He does not cite one example of another African–American who was terminated for reasons which raise an inference of discrimination, and the statistical evidence he provides is vague and ambiguous. It is true that 29 African–American supervisors were terminated for cause between the years 1984–1994 while 7 white supervisors

were so terminated despite the fact that whites comprised 55 % of the work force and African–Americans only 20%. (Kruger Aff. Ex. 2; April 7 Tr. at 12.) However, 17 Hispanic supervisors were terminated for cause, and given the fact that they are 13.3% of the work force, this shows that Hispanics and African–Americans were terminated at approximately the same rate. (Kruger Aff. Ex. 2; Ex. 3.) This hardly establishes plaintiff's contention that Hispanics were favored over African–Americans in disciplinary proceedings. Moreover, plaintiff made no attempt to investigate the terminations of the 29 African–Americans in order to determine whether they were terminated in circumstances similar to those of plaintiff. That would be the type of evidence plaintiff would need to introduce in order to show that the employer's stated reason for discharging plaintiff was a pretext.

The only other evidence plaintiff introduces comes in the form of affidavits of employees and former employees of defendant who allege (1) that Rivera provoked the incident on July 24, 1996 which resulted in his termination, and (2) that Mt. Sinai discriminates against African–Americans in favor of Hispanics insofar as overtime opportunities and working conditions are concerned.

With regard to the incident with Rivera, regardless of who was originally to blame, defendant concluded that plaintiff behaved improperly by resuming the argument after it had ended and by not only agreeing to a fight but also recommending that it take place on Madison Avenue, which was closer to defendant's premises than Rivera's suggestion of Central Park. Plaintiff has admitted both of these facts, and even if it is assumed (as the court has for the purposes of analyzing the summary judgment motion) that Rivera was the primary instigator of the hostilities, defendant was clearly within its right to terminate plaintiff based on the conduct to which he has admitted given his past history of troubled relations with employees.

As regards the disparate treatment with regard to working conditions, the affidavits submitted by plaintiff are problematic for several reasons. First of all, they are extremely generalized and do not delineate

specific instances of disparate treatment. Secondly, they do not involve any disciplinary actions at all, and plaintiff has made no claims regarding overtime, work assignments, promotions or leaves of absence. Finally, many of the allegations involve favorable treatment of Hispanics by other Hispanic supervisors. Given that it was Walls, an African–American, who recommended plaintiff's termination, it is difficult to see why the behavior of certain Hispanic supervisors with regard to the overtime and work assignments of lower-level employees is at all relevant to this case.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.