**Joseph AGUGLIARO, Plaintiff,**

**v.**

**BROOKS BROTHERS, INC.,
et al., Defendants.**

No. 91 Civ. 4030.

United States District Court,
S.D. New York.

June 11, 1996.

Arthur G. Nevins, Jr., New York City, for plaintiff.

Rogers & Wells, Margaret Blair Soyster, Judith M. Reilly, New York City, for defendants.

## OPINION

CHIN, District Judge.

In this employment discrimination case, after receiving a complaint of sexual harassment from an employee against a manager, the defendant employer took swift and decisive action. It interviewed both the employee (a 24–year old female stock clerk) and the manager (a 51–year old man), determined that the employee was credible and that the manager was not, and dismissed the manager for "sexually harassing behavior." Seeking to turn the civil rights laws upside down, the manager brought this lawsuit, alleging that he was the victim of age and sex discrimination.

Before the Court is defendants' motion for summary judgment. The motion is granted and the second amended complaint is dismissed, for no reasonable jury could conclude that defendants' articulated nondiscriminatory reason for discharging plaintiff—that he sexually harassed a subordinate employee—was pretextual. Indeed, on the present record, it is clear that plaintiff did engage in inappropriate sexual conduct with a subordinate employee on the premises during business hours. Moreover, even assuming for purposes of this motion that plaintiff did not engage in inappropriate sexual behavior, defendants fired him because they believed in good faith that he had, and plaintiff has presented no evidence to show otherwise. Accordingly, the motion is granted and the complaint is dismissed in all respects.

## STATEMENT OF THE CASE

### A.  Prior Proceedings

This action was commenced on June 13, 1991 by plaintiff Joseph Augugliaro against defendants Brooks Brothers, Inc. ("Brooks Brothers"), Marks & Spencer plc ("Marks & Spencer"), Andrea Ross, Brian Curry, Pilarica R. Pasion (sued herein as Erica Pasion), and Sixto B. Sarmiento, Jr. (sued herein as Jan Sixto Sarmiento). Plaintiff alleged that defendants terminated his employment with Brooks Brothers in violation of the Age Dis-

crimination in Employment Act (the "ADEA"), as amended, 29 U.S.C. § 621 et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., Section 510 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1140, and the New York Human Rights Law, N.Y.Exec.Law § 290 et seq. Plaintiff also asserted common law causes of action for tortious interference with contract and intentional infliction of emotional distress.

Plaintiff filed an amended complaint on October 16, 1991. In July 1992, Judge Duffy, to whom this case was then assigned, granted defendants' motion to dismiss the amended complaint in part; he also granted plaintiff leave to file a second amended complaint. Plaintiff did so in August 1992.

The case was reassigned to the undersigned on February 22, 1995. Following the completion of discovery, defendants moved for summary judgment. Defendants' motion was supported by documentary evidence, excerpts from Augugliaro's deposition, and several affidavits that set forth the facts leading up to plaintiff's discharge. In opposing the motion, however, plaintiff submitted no affidavits. Instead, he relied solely on excerpts from his deposition as well as excerpts from depositions of two of the defendants. In reply, defendants submitted additional affidavits and deposition excerpts. The record does not contain a complete transcript of plaintiff's deposition, nor does it contain any affidavit or other sworn statement from plaintiff seriously contesting defendants' version of the events leading to his discharge.

### B.  The Facts

#### 1.  Defendants' Factual Showing

Defendants' motion papers demonstrated the following:

Augugliaro was employed by Brooks Brothers for more than 30 years, the last 20 of which he served as manager of the stock and receiving department at its Madison Avenue store. He was fired on June 18, 1990, at which time he was 51 years old.

On June 9, 1990, Andrea Ross, the personnel manager at the Madison Avenue store, received a report that Pilarica Pasion, a 24-year old female stock clerk at the store, had lodged a complaint of sexual harassment.[1] On June 12, 1990, Ross interviewed Pasion.

Pasion reported to Ross that Agugliaro, who was one of Pasion's superiors, had engaged in repeated acts of a sexual nature toward her at the Madison Avenue store while it was open for business. She told Ross the following: On three separate occasions, Agugliaro exposed himself to her and forced her to touch his genitals. On each of those occasions, Agugliaro touched her on her breasts and buttocks, and on one of those occasions he pulled her pants down to her knees and fondled her. On three other separate occasions, he followed her into the 9th floor women's restroom. Pasion told Ross that she had not intentionally encouraged Agugliaro's sexual conduct, but that she had been afraid not to do what he wanted for fear of losing her job.[2]

After meeting with Pasion, Ross met with Agugliaro, in the presence of Brian Curry, then the operations manager of the Madison Avenue store. Agugliaro admitted to Ross and Curry that a lot of "touching and feeling" had occurred between him and Pasion, but he contended that this had been consensual. He also repeatedly stated that he and Pasion had not engaged in sexual intercourse. He acknowledged to Ross and Curry that he should not have allowed what happened to occur at work.[3]

Ross suspended Agugliaro pending completion of her investigation and directed him to leave the store. She concluded that Pasion was telling the truth and was convinced that Agugliaro had engaged in the sexual conduct that Pasion had reported. Ross also concluded that Agugliaro had not been completely forthcoming. Ross then consulted with her superior, John Irvin, the Senior Vice President of Human Resources of Brooks Brothers.

On June 14, 1990, Ross and Curry met with Agugliaro again. Ross asked Agugliaro to reiterate what had occurred between him and Pasion. He said that he and Pasion did the stockwork on the 10th floor of the store on many Saturdays. He said that Pasion used to tell him that she was grateful to him for helping her with her job and that she would start kissing him. He said he simply responded to her kisses and rubbed her back. He said he rubbed the backs of other female employees and saw nothing wrong with it. He said he could not remember whether he had touched Pasion in other parts of her body. He denied that anything improper had occurred. Ross believed that Agugliaro had changed his story significantly from their earlier conversation.

Ross consulted with Irvin again, and together they decided to fire Agugliaro. Ross still believed Pasion was telling the truth, and they were both troubled by the repeated sexual contact between a supervisor and a low-level employee at the store and the indications of force, coercion, and intimidation. They determined that Agugliaro had to be dismissed, for they felt it would have made a "mockery" of Brooks Brothers' sexual harassment policy if they permitted a manager whom they believed to have sexually harassed a subordinate employee to remain in place.

On June 18, 1990, Agugliaro was dismissed. Ross told him that he was being fired because of the sexual harassment charge. (Agugliaro Dep. at 230). The Record of Disciplinary Action, dated June 18, 1990, which was discussed with Agugliaro, reports that his employment was terminated for engaging in "sexually harassing behavior

---

1. According to plaintiff, Pasion was 22 years old when she began working as a stock clerk at Brooks Brothers in 1988. (Pl.Mem. at 7).

2. Agugliaro testified at his deposition that Pasion did not flirt with him and had never made sexual advances toward him. (Agugliaro Dep. at 157). He also testified that he never saw her flirt with or make sexual advances toward any other Brooks Brothers employee. (*Id.* at 157–58).

3. Agugliaro also acknowledged at his deposition that it would be a violation of Brooks Brothers' policies for an employee to engage in sexual behavior in the store and that it would be appropriate to discipline such an employee. (Agugliaro Dep. at 172, 174–75).

with a stockwoman from the main floor during business hours on the premises."

In their affidavits, defendants have denied that Agugliaro was dismissed for any reason other than their belief that he had sexually harassed Pasion. Indeed, Agugliaro admitted at his deposition that he had no factual basis for believing that Ross did not honestly believe that he had engaged in sexual conduct with Pasion at the store. (Agugliaro Dep. at 235–36). Moreover, Agugliaro testified at his deposition that he could not recall Ross or Curry ever saying anything to him that caused him to conclude that he was being dismissed because of his age or to interfere with future salary and retirement benefits. (Agugliaro Dep. at 253–54).

## 2. *Plaintiff's Response to the Motion*

As noted, plaintiff submitted no affidavits in opposition to defendants' motion. Rather, the only evidentiary materials submitted were excerpts from plaintiff's deposition as well as excerpts from the depositions of Ross and Sarmiento, a Brooks Brothers employee who worked with Agugliaro and Pasion.

Although plaintiff has alleged in wholly conclusory fashion in his memorandum of law that the "allegations" against him were "totally false" (Pl.Mem. at 9), he has not submitted any evidentiary material denying that he engaged in sexual conduct with Pasion on the premises during business hours. Indeed, he has not addressed, under oath, the specific allegations that Ross has alleged that Pasion reported to her. Nor has he disputed Ross's sworn statement that he told her at the first meeting that a lot of "touching and feeling" had occurred between him and Pasion at the store during business hours. Although plain-

tiff submitted 48 pages in excerpts from his deposition transcript in response to defendants' moving papers, none of those pages contains any testimony concerning whether he engaged in the alleged sexual conduct.[4]

Instead, the deposition excerpts submitted by plaintiff pertain primarily to a purported complaint by Pasion against another employee (Agugliaro Dep. at 116–23), the relationship between Pasion and Sarmiento (*id.* at 158–60), conversations with co-workers (virtually all unnamed) containing purportedly age-related comments (*id.* at 258–64), the relationship between Marks & Spencer and Brooks Brothers (*id.* at 304–15), and the discharge of certain other individuals (*id.* at 390–98). These excerpts also contain plaintiff's testimony that he "just had a feeling" that Ross was "offensive" and "[d]idn't like seniority [sic] men." (*Id.* at 266). He could not, however, recall her doing or saying anything to lead him to that conclusion. (*Id.* at 267).

## DISCUSSION

### A. *Applicable Legal Standards*

The standards applicable to motions for summary judgment are well-settled. A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Accordingly, the court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is

---

**4.** The only portion of the deposition excerpts submitted by plaintiff that even remotely addresses the question of whether he engaged in the sexual conduct is his testimony on pages 386–87 of his deposition, when he was asked to explain what he had said in an affidavit. This testimony, however, certainly does not create an issue of fact as to whether he engaged in the sexual conduct in question.

Defendants' excerpts from Agugliaro's deposition, however, do include two general denials by plaintiff of wrongdoing. He testified that, at the meeting on June 12, 1990, he told Ross and Curry that there was "no truth" to the "accusations." (*Id.* at 188). He could not recall what

else he said at that meeting. (*Id.* at 188, 190–94). He also testified that at the second meeting he told Ross and Curry that the accusations against him were false and that that was all he said. (*Id.* at 206, 208). These excerpts do not, however, contain any description of what the accusations were. Moreover, in the face of Ross's specific recollection and plaintiff's lack of recollection of what he said at the first meeting, a reasonable jury could only conclude that plaintiff admitted at the first meeting that he had engaged in a lot of "touching and feeling" with Pasion at the store (although, according to him, on a consensual basis).

inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510–11.

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. As the Court held in *Anderson,* "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted); *see generally Celotex Corp. v. Catrett,* 477 U.S. 317, 322–26, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986).

Claims of discrimination under the ADEA and Title VII are subject to the three-step analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See de la Cruz v. New York City Human Resources Admin. Dep't of Social Servs.,* 82 F.3d 16, 20 (2d Cir.1996); *Equal Employment Opportunity Comm'n v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994). Under the *McDonnell Douglas* test, plaintiff has the initial burden of establishing a prima facie case of unlawful discrimination. If that burden is met, defendant then must offer a legitimate, non-discriminatory reason for plaintiff's discharge, at which point the plaintiff must prove by a preponderance of the evidence that the proffered reason is pretextual, that it is, in reality, a pretext for unlawful discrimination. *Id.* (*citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993)). The same procedure applies to an action brought under the New York Human Rights Law. *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1225 (2d Cir. 1994).

To establish a prima facie case, plaintiff must demonstrate that: (i) he is a member of a protected class, (ii) qualified for the position, (iii) who was subjected to an adverse employment decision, (iv) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hargett v. National Westminster Bank, USA,* 78 F.3d 836, 838 (2d Cir.1996) (*citing Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 464 (2d Cir.1989)); *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408–09 (2d Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Sweeney v. Research Found. of State Univ. of New York,* 711 F.2d 1179, 1184–85 (2d Cir.1983).

For purposes of this motion, I will assume that plaintiff has demonstrated a prima facie case of discrimination. The burden thus shifts to defendants to articulate a legitimate, non-discriminatory basis for their decision to discharge plaintiff. Clearly, they have done so. Their detailed affidavits articulate a completely appropriate and justifiable reason for dismissing plaintiff—their belief that he had sexually harassed a subordinate employee. The burden thus shifts back to plaintiff to show that defendants' stated reason for his discharge is a pretext for an illegal discriminatory motive.

### B. *The Evidence of Pretext*

In the summary judgment context, a plaintiff must show the existence of a genuine issue of material fact with respect to whether defendants' articulated reason for its decision is pretextual. The plaintiff must do so by "produc[ing] not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'" *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996) (*quoting Woroski v. Nashua Corp.,* 31 F.3d 105, 110 (2d Cir.1994)); *see also Gallo,* 22 F.3d at 1225 (to defeat summary judgment where defendant has articulated legitimate, nondiscriminatory reason for its action,

plaintiff must establish existence of genuine issue of material fact "through direct, statistical or circumstantial evidence as to whether [defendant's] reason for discharging [him] is false *and* whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision").

■ Here, Agugliaro has failed to demonstrate the existence of a genuine issue of fact as to the issue of pretext. First, on the present record, a reasonable jury could only conclude that plaintiff did sexually harass a 24–year old female stock clerk who was his subordinate. In the face of defendants' detailed affidavits, plaintiff presented no evidentiary materials to show that he had not sexually harassed Pasion. While a party is not obligated by Rule 56 to submit affidavits, he is required to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff's failure to submit a sworn affidavit denying the alleged inappropriate sexual conduct is most telling. Likewise, the deposition excerpts that he submitted do not address the question. Although plaintiff characterizes the "allegations" as "totally false" in his memorandum of law, this unsworn, conclusory denial of unspecified allegations is insufficient to raise an issue of fact. The deposition excerpts submitted by defendants containing plaintiff's testimony that there was "no truth" to the accusations are also insufficient, given the complete lack of detail. Hence, plaintiff has not presented "sufficient evidence to support a rational finding" that his sexual misconduct was not the real reason for his discharge. *See Van Zant,* 80 F.3d at 714 (citation omitted).

Second, even assuming that plaintiff has presented sufficient evidence to raise an issue of fact as to whether he actually sexually harassed Pasion, and even assuming for pur-

poses of this motion that he did not do so, the incontrovertible evidence shows that defendants *believed* in good faith that he had done so. Plaintiff has presented no evidence to rebut defendants' sworn statements to the effect that they found Pasion to be credible, believed that plaintiff had sexually harassed her, and fired him because of that belief. In fact, plaintiff admitted at his deposition that he could present no facts to show that Ross, the critical person involved in making the decision to fire plaintiff, did not actually believe that he had engaged in sexual conduct. He testified as follows:

> Q. Do you have any factual basis for believing that Andrea Ross did not honestly believe that you had engaged in sexual conduct with Erica Pasion in the Brooks Brothers store?
>
> .   .   .   .   .
>
> A. No.

(Agugliaro Dep. at 235–36). Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status.[5]

Third, although plaintiff has attempted to conjure up the specter of discrimination by offering purportedly age-based comments and the purported dismissals of other older employees as part of a scheme by Marks & Spencer to purge Brooks Brothers of older employees, he relies only on speculation and surmise, his own subjective "feeling," and the statements of, with one exception, unnamed co-workers. (Agugliaro Dep. at 258–69). *See Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 19 (2d Cir.1995) (speculative assertions on matters as to which plaintiff has no knowledge or evidence

---

**5.** *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993) ("To the extent that Waggoner's summary judgment evidence relates to his innocence of the sexual harassment charge, it is irrelevant. He must, instead, produce evidence demonstrating that Hamilton or Phillips did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his age."); *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th

Cir.1991) ("We can assume for purposes of this opinion that the complaining employees interviewed by Rives were lying through their teeth. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill *believed* that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge."); *Johnson v. J.C. Penney, Co.,* 876 F.Supp. 135, 139 (N.D.Tex.1995).

are insufficient to defeat summary judgment). The one statement that he can actually attribute to any particular employee was a statement made to him in "the 80s" that he admittedly took as a joke. (*Id.* at 264). He did not recall Ross or Curry ever making an age-related comment to him. (*Id.* at 262–63, 265). Although he also testified about certain older individuals who were purportedly fired or laid-off, clearly he did not have personal knowledge of the circumstances involved. (*Id.* at 259–60, 269, 387, 390–98). In fact, he was wrong about many of these individuals and his information was also incomplete. (*See* Supp.Aff. of Andrea Ross ¶¶ 2, 3, 4).[6]

Finally, plaintiff points to a younger employee, Max Arias, who was not disciplined although he had also been accused by Pasion of sexually inappropriate conduct. Plaintiff suggests that the different treatment of a younger employee is evidence of discrimination against him. (Pl.Mem. at 10, 15). That suggestion is rejected. Arias was accused by Pasion only of making a vulgar comment on one occasion; he was not accused of touching her. (*See* Pl.Mem. at 8). More significantly, it was plaintiff *himself* who investigated the matter, and it was plaintiff who decided that the matter should be "dropped." (Agugliaro Dep. at 116–23).

In sum, defendants have made a properly supported motion for summary judgment showing that they fired plaintiff because they believed he had sexually harassed a subordinate employee. Hence, it was incumbent upon plaintiff to present "specific facts"—not conclusory allegations, speculation, surmise, or "feelings"—to show the existence of genuine issues for trial. He has failed utterly to do so.[7]

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The

Clerk of the Court shall enter judgment in favor of defendants dismissing the second amended complaint, with prejudice and with costs.

SO ORDERED.

---

6. Nor has plaintiff, for these reasons, presented sufficient evidence to raise a genuine issue of material fact with respect to his "mixed motives" claim. The purported age-based comments of unnamed individuals, the "feeling" of discrimination, and the speculative, incomplete testimony regarding other employees do not constitute evidence "sufficient to permit the factfinder to infer that [the discriminatory] attitude was more likely than not a motivating factor in the employer's

decision." *Ostrowski v. Atlantic Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992); *see also Hargett,* 78 F.3d at 840–41.

7. Since all of plaintiff's claims are premised on the contention that defendants did not dismiss him for a legitimate business reason, all of his claims must be dismissed. Hence, defendants' remaining arguments need not be reached.