**Ronnie SMITH, Plaintiff,**

v.

**Sam PLANAS, Melody Hotley, Donna King, Ray Sumaya, Gracie Square Hospital, and Peter Kennedy, Defendants.**

**No. 90 Civ. 1732(MJL).**

United States District Court, S.D. New York.

Aug. 18, 1997.

Michael T. McGrath, Putney, Twombley, Hall & Hirson, New York City (Michael Collins, of Counsel), for Defendants.

Ronnie Smith, New York City, pro se.

## OPINION AND ORDER

LOWE, District Judge.

Plaintiff Ronnie Smith ("Plaintiff"), proceeding *pro se*, commenced this race discrimination action against his current employer, defendant Gracie Square Hospital ("GSH"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"). Before the Court is the motion of GSH, pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), for summary judgment dismissing the complaint.[1] For the reasons stated below, GSH's motion is granted.

---

[1] The instant motion also seeks summary judgment on behalf of defendant Peter Kennedy, a GSH administrator. Because the Court previously dismissed this action as against defendant Peter Kennedy, the Court need not address the arguments made on his behalf. *See* Order, dated September 16, 1996, at 2. The Court also previously dismissed all other individual defendants from this case. *See* Op. and Order, dated March 4, 1996, at 3.

## BACKGROUND [2]

GSH is a not-for-profit hospital. *See* GSH's 56.1 Statement ¶ 3 ("GSH Statement"). Plaintiff, a black male, began working for GSH in 1986 as a part-time cook. *See* Pl.'s Dep. Tr. at 13 ("Tr."). In 1988, GSH elevated Plaintiff to the full-time position of relief cook's helper in the dietary department. *See id.* at 25–26. Dietary department employees are represented for collective bargaining purposes by labor union Local 1199. *See* GSH Statement ¶ 5. The dietary department is supervised by ARA-MARK Healthcare Support employees, including defendants Sam Planas, Melody Hotley, and Donna King. *See* Affidavit of Michael T. McGrath, dated May 10, 1996, at ¶ 2 ("McGrath Aff.").[3] At all times relevant to this action, Barbara Thompson was the Human Resources Director at GSH. *See* McGrath Aff. ¶ 2; Affidavit of Ronnie Smith, dated May 25, 1991, at ¶ 2.

GSH's dietary department has three cook positions, graded first, second, and third, in descending order of duties and compensation. *See* GSH Statement ¶ 6. Relief cook's helpers, like Plaintiff, assist dietary personnel when the kitchen is fully staffed. *See id.* ¶ 4. Relief cook's helpers also serve as temporary substitutes for cooks who are absent due to illness, injury, or vacation. *See id.* In accordance with the collective bargaining agreement, in the absence of one of the three cooks, the most senior employee present substitutes for the vacant position. *See id.* ¶¶ 7–9; Affidavit of Peter Kennedy, dated May 13, 1996, at ¶ 10 ("Kennedy Aff.").[4] For example, with the absence of the first cook, the second cook moves to the first cook's position, the third cook to the second cook's position, and the most senior relief cook's helper to the third cook's position. *See id.*

¶ 7. Thus, an employee who reports to work after a vacancy has been filled is not eligible to substitute for that position, even though the employee may be more senior than the substitute. *See* Kennedy Aff. ¶ 11; GSH Statement ¶ 11. GSH submits that it adheres to this policy in order to insure continuity and consistency in job performance. *See* GSH Statement ¶ 11.

In early 1989, Plaintiff worked in the GSH cafeteria on the weekends as a cook. *See id.* ¶ 15(B). Budgetary restraints, however, forced GSH to eliminate weekend cafeteria service as of June 3, 1989. *See id.* ¶ 15(C). The cafeteria closing reduced the number of shifts Plaintiff worked as a cook, thereby increasing his number of shifts as a relief cook's helper. *See id.* ¶ 15(D). GSH contends that Plaintiff "took personal exception" to the closing of the cafeteria and complained that he needed training for the relief cook's helper position. *See* Kennedy Aff. ¶ 14(F). GSH arranged for such training. *See* GSH Statement ¶ 15(F). Plaintiff, however, called in sick for many of the scheduled training sessions, ultimately receiving a final written warning dated August 7, 1989 as discipline for his behavior. *See* Kennedy Aff. ¶ 14(H); GSH Statement ¶ 15(H). Plaintiff also received another written warning on that date for not completing a job task on time. *See* Kennedy Aff. ¶ 14(G); GSH Statement ¶ 15(G). Plaintiff filed a grievance concerning this discipline. GSH Statement ¶ 15(I).

On August 23, 1989, defendants Peter Kennedy, Sam Planas, and Barbara Thompson met with Plaintiff to address his grievance and "clear the air." *See* Kennedy Aff. ¶ 14(K); GSH Statement ¶ 15(K). At the meeting, Peter Kennedy explained to Plaintiff what GSH expected of him and reassured him that

---

**2.** The Court construes Plaintiff's opposing affidavit as his statement of facts as required by Rule 56.1 of the Local Rules of this Court. The Court notes, however, that Plaintiff's submission fails to controvert much of the factual assertions in GSH's 56.1 Statement. Accordingly, the Court considers any uncontroverted portions of GSH's 56.1 Statement admitted. *See* S.D.N.Y. Local R. 56.1(c) ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement" of non-moving party). The Court further notes that Plaintiff's *pro se* status

does not exempt him from the usual requirements of summary judgment.

**3.** Michael McGrath serves as legal counsel for GSH. *See* McGrath Aff. ¶ 1.

**4.** Defendant Peter Kennedy is currently the Associate Administrator for GSH. *See* Kennedy Aff. ¶ 1. As Associate Administrator, he oversees human resources and the dietary department. *See id.* ¶ 2. Kennedy was formerly the Director of Human Resources. *See id.*

he would remain employed if he performed his job satisfactorily. *See* Kennedy Aff. ¶ 14(K); GSH Statement ¶ 15(K). GSH contends that the meeting failed to stem Plaintiff's disciplinary problems. · *See* GSH Statement 15(L). On September 5, 1989, Plaintiff received a three-day suspension for his continued excessive use of sick time on days he was scheduled for non-cook's duties. *Id.* GSH submits that "[n]one of these disciplinary actions were based on his race, but rather were based solely on his job performance." *See* Kennedy Aff. ¶ 12.

In October 1989, Plaintiff's co-workers, Freddie Jackson, Willie Barnhill, and Hillary Davenport (all of whom are black), requested a meeting with Barbara Thompson to complain about Plaintiff's performance. *See id.* ¶ 13. In view of Plaintiff's continued disciplinary problems, GSH considered more severe discipline such as an extended suspension or discharge. *Id.* ¶ 14(M); GSH Statement ¶ 15(M). But, before GSH took any action, Plaintiff obtained a 10–month medical leave of absence. *See* GSH Statement ¶ 15(M). Plaintiff remains, to date, an employee of GSH. *Id.* ¶ 16.

In 1990, Plaintiff commenced this race discrimination action, alleging that GSH: (1) failed to "promote" him to higher paying positions, (2) harassed him with false disciplinary charges and threats of termination in the hopes of forcing his dismissal, and (3) violated his rights under Section 1981. Second Am. Compl. ¶¶ 1, 9–10. With regard to the discriminatory promotion claim, Plaintiff testified at his deposition that he "wasn't promoted up into a higher … cook position [especially the second cook position] when it was available, as far as people being out on vacation, people being out on jury duty … . [and] was treated differently on the schedule … . [c]ompared to people [with] less seniority than me." *See* Tr. at 36, 78–79, 84. Plaintiff has identified five black men (Malcolm Campbell, Freddie Jackson, Kevin Benson, Leon Wilson, and Hillary Davenport) and two hispanic men (Jorge Ferrara and David Rodriguez) as the less-senior employees whom GSH temporarily elevated to higher-paying cook's positions instead of him. *See* Affidavit of Ronnie Smith, dated July 11,

1997, at ¶ 7 ("Pl.'s Opp'n Aff."); Tr. at 37–38, 45, 80, 196–97, 252. At his deposition, Plaintiff identified October 22, 1989 as an example of his exclusion from high-paying cook's positions. *See* Tr. at 102–03. Plaintiff explained that, when he arrived to work at 10:00 a.m., GSH had already substituted Jorge Ferrara to a higher cook's position at 8:00 a.m. *See id.*

As to GSH's alleged harassment, Plaintiff testified that his supervisors "constantly threatened [him] with termination and [false] write-ups about job incompletions" due to his race. Tr. at 38–39. According to Plaintiff, supervisors Sam Planas and Barbara Thompson "conspire[d]" to terminate him, "ignored [his] complaints," and "treated [him] with no respect" Tr. at 125. Plaintiff further testified that GSH supervisors overlooked the misdeeds of "others [who] were doing worse than what [he] was [doing]." Tr. at 272. Plaintiff attests that he "can offer medical proof and other material facts to substantiate his injuries and [] employment violation[s]," Pl.'s Opp'n Aff. ¶ 12, but fails to present such evidence to the Court. When asked about the September 5, 1989 suspension for excessive sick days, Plaintiff acknowledged that he called in sick on those days. *See* Tr. at 241. Plaintiff also admitted that he never heard his supervisors make any racial comments. *See* Tr. at 75.

GSH denies that its scheduling decisions and disciplinary actions were based on racial considerations, and argues instead that it had legitimate, nondiscriminatory reasons for its actions. GSH argues that, under its nondiscriminatory substitution procedures, employees with less seniority than Plaintiff only moved to cook positions ahead of him when a vacancy arose before he arrived to work. *See* Def.'s Mem. at 8. GSH submits that it disciplined Plaintiff because of his delinquency on the job, not because of his race. *See id.*

GSH moves for summary judgment on Plaintiff's discriminatory promotion and harassment claims on two grounds: (1) that Plaintiff has failed to present a prima facie case, and (2) that Plaintiff has not sufficiently challenged GSH's nondiscriminatory reasons for its actions. *See* Def.'s Mem. at 1. GSH

also seeks summary judgment on Plaintiff's Section 1981 claim. *Id.*

## ANALYSIS

### I. *Summary Judgment Standard*

A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). No genuine issue exists "if, based on all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Connecticut General Life Ins. Co.,* 92 F.3d 81, 86 (2d Cir.1996); *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994).

To defeat a motion for summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Rather, the opposing party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). Motions for summary judgment cannot be "defeated merely ... on the basis of conjecture or surmise." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 17 (2d Cir.1995).

The general principles of summary judgment apply with equal force to employment discrimination claims. *See McLee v. Chrysler Corp.,* 38 F.3d 67, 68 (2d Cir.1994). But, because intent is often disputed in such cases, courts treat summary judgment motions in discrimination actions with special caution. *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1224 (2d Cir.1994). Nonetheless, summary judgment may be ap-

propriate for discrimination claims when the plaintiff does nothing more than present "conclusory allegations." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985); *see, e.g., Sciarrino v. Municipal Credit Union,* 894 F.Supp. 102, 108 (E.D.N.Y.1995).

### II. *Title VII*

#### A. *Applicable Legal Standards*

Plaintiff alleges that he was discriminated against in his employment in violation of 42 U.S.C. § 2000e–2, which provides, in pertinent part: "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges" on the basis of his race. 42 U.S.C. § 2000e–2(a).

The Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), established the framework for the "allocation of the burden of production and an order for the presentation of proof in discriminatory-treatment claims." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993). Under the Court's three-step Title VII analysis, a plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. A plaintiff makes out a prima facie case by showing: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment decision; and (4) under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hargett v. National Westminster Bank, USA,* 78 F.3d 836, 838 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 84, 136 L.Ed.2d 41 (1996). Plaintiff's burden at this initial stage is "minimal." *Saint Mary's,* 509 U.S. at 506, 113 S.Ct. at 2746–47. Establishment of the prima facie case "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.*

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to

articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25. Defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by discriminatory animus." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). If the defendant carries this burden of production, "the presumption raised by the primá facie case is rebutted" and "drops" from the case. *St. Mary's*, 509 U.S. at 510–11, 113 S.Ct. at 2748–50.

At the final stage, plaintiff must satisfy its burden of persuasion on the ultimate question: whether the defendant intentionally discriminated against plaintiff on an unlawful basis. *Id.* at 507–08, 113 S.Ct. at 2747–48. In the summary judgment context, this requires a plaintiff to establish a genuine issue of material fact with respect to whether defendant's articulated reason for its decision is pretextual. *See Chertkova*, 92 F.3d at 92. The plaintiff must do so by "produc[ing] not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996); *Agugliaro v. Brooks Brothers, Inc.*, 927 F.Supp. 741, 746 (S.D.N.Y.1996).

### B. *GSH's Motion for Summary Judgment*

#### 1. *Failure to Promote Claim*

■ The three-step burden shifting analysis applies to Plaintiff's discriminatory promotion claim. To establish a prima facie case of discriminatory denial of a promotion, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the promotion; (3) his promotion was delayed; and (4) the delay in promotion occurred in circumstances giving rise to an inference of discrimination. *See Rosen v. Thornburgh*, 928 F.2d 528, 532 (2d Cir.1991).

GSH argues that Plaintiff has failed to establish a prima facie case under the *McDonnell Douglas* framework on the grounds that he has not shown that the denial of the "promotions" occurred under circumstances giving rise to an inference of race discrimination. *See* Def.'s Mem. at 7.[5] The Court agrees. Five of the seven individuals identified by Plaintiff as having received higher-paying assignments were black—members of Plaintiff's protected class. As such, Plaintiff has failed to make out a prima facie case of race discrimination because he cannot show that the adverse employment action taken against him occurred in circumstances giving rise to an inference of race discrimination.[6] *See Samuels v. New York State Dep't of Correctional Servs.*, No. 94 Civ. 8645, 1997 WL 253209, at *5 (S.D.N.Y. May 14, 1997) (finding that plaintiff had failed to make out prima facie case of race discrimination in discriminatory promotion action because two of four promotions of which she complained involved promotions of members of plaintiff's protected class).

■■ Even if a prima facie case had been established, the Court finds that GSH has offered a legitimate, nondiscriminatory reason for its actions. GSH has presented evidence of its substitution policy. The Court

---

**5.** GSH also argues that Plaintiff cannot satisfy the second prong of the *McDonnell Douglas* test, *i.e.*, that he applied for a job promotion and was rejected. GSH contends that the higher graded cook's positions denied Plaintiff were not, in fact, job promotions, but instead were temporary assignments. *See* Def.'s Mem. at 7. The Second Circuit's decision in *Gibson v. American Broadcasting Cos.*, 892 F.2d 1128 (2d Cir.1989), however, casts doubt on GSH's argument. In *Gibson*, plaintiff alleged that he was denied regularly scheduled weekends off because he was black. *Id.* at 1130. The court found that plaintiff had established a prima facie case of discriminatory promotion. *Id.* at 1131. Thus, implicit in the *Gibson* holding is the notion that claims based on the denial of beneficial scheduling, as here, fall within the rubric of discriminatory promotion.

**6.** Plaintiff contends that unspecified "medical [records], police reports, schedules and judicial documents from other proceeding[s]" establish his prima facie case of race discrimination. Pl.'s Mem. at 4. Contrary to Plaintiff's conclusory assertions, no evidence in the record supports an inference of race discrimination in GSH's scheduling decisions.

finds that the policy is not discriminatory on its face, nor has it been applied to Plaintiff in a discriminatory manner. In the dietary department, a vacancy is filled with the most senior employee present at the time the opening arises. Once an employee moves up to an absent cook's position, that employee does not step down later in the day when a more senior employee arrives to work. Documentary evidence submitted by GSH supports the application of this policy: on the two occasions a less-senior, non-black employee (Jorge Ferrara) was assigned to higher-paying positions ahead of Plaintiff, the vacancy arose (and was filled) before Plaintiff arrived to work.[7] No evidence in the record suggests that GSH's reasons were a pretext for race discrimination. Accordingly, summary judgment is proper on this claim. *See Meiri,* 759 F.2d at 988.

### 2. *Harassment/Hostile Work Environment Claim*

■ The Second Circuit has made clear that "a working environment overrun by racial antagonism constitutes a Title VII violation." *Snell v. Suffolk County,* 782 F.2d 1094, 1102 (2d Cir.1986). Liability based on a hostile work environment exists when "the [plaintiff's] workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). To establish this claim, however, plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity." *Snell,* 782 F.2d at 1103. "Casual comments, or accidental or sporadic conversation" will not trigger Title VII relief. *Id.*

---

**7.** Plaintiff initially contended that GSH had "concealed, destroy[ed] or tamper[ed] with evidence [the dietary schedules for the pay period May 25, 1991 through May 22, 1994] to suppress the truth" about his allegations. Pl.'s Aff. ¶ 16. Since then, Plaintiff has informed the Court that he has copies of those records, which he disclosed to GSH. *See* Letter of Ronnie Smith to Court, dated August 5, 1997, at 1; Letter of Ronnie Smith to Court, dated August 11, 1997, at 1; Letter of Michael T. McGrath, Esq. to Court, dated August 8, 1997, at 1. Nonetheless, the

Aside from conclusory allegations of a "conspiracy" to fabricate disciplinary charges against him, overlook the misdeeds of unnamed "others," and "treat [him] with no respect," Plaintiff offers no evidence to corroborate his allegations of harassment. In fact, Plaintiff has admitted that he has never heard his supervisors at GSH utter racial comments which could give rise to an abusive work environment. *See* Tr. at 75. Nor does Plaintiff dispute the reasons given by GSH for his disciplinary charges. Plaintiff instead acknowledges that he "was out of work" on the days pertaining to his discipline for excessive use of sick time. Additionally, nothing in the record suggests that GSH treated non-blacks differently than Plaintiff.[8] Plaintiff, in essence, rests his claim exclusively on the conclusory assertion that race explains the disciplinary actions taken against him. This is simply not sufficient to defeat a summary judgment motion. *See Smith v. American Express Co.,* 853 F.2d 151, 154–55 (2d Cir.1988) (granting summary judgment where plaintiff's allegations were "conclusory and unsupported by evidence of any weight"); *Meiri,* 759 F.2d at 998 (same); *Lamb v. CitiBank, N.A.,* No. 93 Civ. 2358, 1994 WL 497275, at *7 (S.D.N.Y. Sept.12, 1994) (same). Accordingly, the Court grants summary judgment in favor of GSH on this claim.

### III. *Section 1981*

■ As the Court previously held, Plaintiff's Section 1981 claim is not cognizable. *See* Op. and Order, dated October 7, 1993, at 2 n. 2, 1993 WL 454258. In *Patterson v. McLean Credit Union,* 491 U.S. 164, 185, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989), the Supreme Court held that Section 1981 did not apply to the discriminatory conduct of an employer after the establishment of the em-

---

Court finds such evidence irrelevant, as the discriminatory acts in this case allegedly occurred in 1988. *See* Second Am. Compl. ¶ 4.

**8.** Plaintiff contends that his dispute with fellow employee, Leon Wilson, supports his harassment claim. Pl.'s Aff. ¶¶ 9–11, 13. Plaintiff, however, fails to establish how a dispute with Mr. Wilson, a black male, is related to any racial animus or hostility in the workplace.

ployment relationship. Although Section 101 of the Civil Rights Act of 1991 overruled *Patterson,* the Supreme Court has held that Section 101 does not apply retroactively. *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 311, 114 S.Ct. 1510, 1518–19, 128 L.Ed.2d 274 (1994). Because the discriminatory acts alleged in this case occurred before Congress enacted the Civil Rights Act of 1991, his claims are not cognizable under Section 1981.

### CONCLUSION

For the foregoing reasons, the Court hereby grants GSH's motion for summary judgment and dismisses the complaint in its entirety.

It is So Ordered.