16-984-cv
*Balk v. NYIT, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand seventeen.

PRESENT: DENNY CHIN,
RAYMOND J. LOHIER, JR.,
*Circuit Judges,*
COLLEEN McMAHON,
*Chief District Judge.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DENNIS BALK,

*Plaintiff-Appellant,*

v.                                                          16-984-cv

NEW YORK INSTITUTE OF TECHNOLOGY,

*Defendant-Cross-Claimant-Appellee,*

MOHAMED YOSSRY HUSSEIN, INFOTEC CORPORATION,

*Defendants-Cross-Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

\*      Chief Judge Colleen McMahon, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PLAINTIFF-APPELLANT:        RIDLEY M. WHITAKER, Law Offices of Ridley M. Whitaker, New York, New York.

FOR DEFENDANT-CROSS-
CLAIMANT-APPELLEE:        DOUGLAS P. CATALANO (Stefanie R. Munsky, *on the brief*), Clifton Budd & DeMaria, LLP, New York, New York.

Appeal from opinions and orders of the United States District Court for the Eastern District of New York (Scheindlin, *J.*).[1]

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the opinions and orders of the district court are **AFFIRMED**.

Plaintiff-appellant Dennis Balk appeals from the opinions and orders of the district court entered September 16, 2015, November 9, 2015, and March 11, 2016, in favor of defendant-appellee New York Institute of Technology ("NYIT"), and defendants Infotec Corporation ("Infotec") and Mohammed Yossry Hussein, dismissing his claims of discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and his state law breach of contract and fraud claims.[2] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

---

[1] Judge Shira A. Scheindlin, United States District Judge for the Southern District of New York, sitting by designation in the United States District Court for the Eastern District of New York.

[2] The district court did not enter a separate judgment dismissing the action as required by Fed. R. Civ. P. 58(a). When a judgment is required to be set out in a separate document but is not, judgment is deemed entered 150 days after the entry of the dispositive order. Fed. R. Civ. P. 58(c)(2)(B). Despite the lack of a judgment, this Court has jurisdiction to hear the appeal, as the opinions and orders constituted a "final decision" within the meaning of 28 U.S.C. § 1291. *See Leftridge v. Conn. State Trooper*

1.      *Background*

Balk -- a white, non-Muslim, American citizen -- began teaching at NYIT's Bahrain campus in June 2006 pursuant to a one-year employment contract.   Infotec provided security and other administrative services to NYIT Bahrain and Hussein was the president of Infotec.[3]   On April 3, 2007, NYIT renewed Balk's teaching contract for another year, pursuant to which he would continue teaching at NYIT Bahrain until May 31, 2008.

On February 18, 2008, Balk met in Bahrain with a group of students who were planning to travel to New York City.   Balk made certain comments during this meeting that led to two of the students filing a formal complaint with the NYIT administration on February 24, 2008.   The students alleged that Balk made anti-Islamic and offensive remarks.   The students stated they "were surprised and shocked with the words that Professor Dennis Balk said as they were extremely rude, humiliating,

*Officer No. 1283*, 640 F.3d 62, 66 (2d Cir. 2011) (finding this Court has jurisdiction to review a "*final* decision" -- "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945))).

[3]        Infotec and Hussein are not parties to this appeal.   Although named as defendants, a certificate of default was entered against Infotec and service on Hussein was never effectuated.   In its March 11, 2016 Memorandum Opinion and Order, the district court *sua sponte* dismissed the claims against them, finding the claims to be without merit for the same reasons the court dismissed the claims against NYIT in its September 16, 2015 Opinion and Order.   *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] defendant who defaults . . . admits all 'well-pleaded' factual allegations contained in the complaint.   However, it is also true that a district court 'need not agree that the alleged facts constitute a valid cause of action.'" (citations omitted)).   Although Balk appeals the March 11 Memorandum Opinion and Order, Balk offers no arguments as to why his claims against Infotec and Hussein should survive if the dismissal of the claims against NYIT is affirmed.

3

disrespectful and full of clear racism." App. 175. The students stated that "[Balk] gave examples about democracy that insults our religious beliefs and as a professor he should realize that the words he said about our Prophet Mohammed peace be upon him are very sensitive and will never be the definition of democracy." *Id.* On his side, Balk acknowledged that he admonished the students that "when they go to the west to be able to understand why people might feel uncomfortable with them," and described a "hypothetical walk down the street where you would pass a mosque or a church, I remember thinking maybe it was Episcopalian where there was a gay congregation and you might see within that church their iconography, their words on the wall where prophets and Gods would be gay." *Id.* at 735, 741-42.

As he acknowledged in contemporary emails to a colleague, Balk began to fear for his physical safety. In a February 26, 2008 email, he told another faculty member at NYIT: "trying to remain rational, middle of the night . . . I can't sleep, am concerned about my physical safety." *Id.* at 190. In another email on February 28, 2008, he said "I am to re-apologize [to the students], this time with more feeling . . . concern for my safety is very much an issue." *Id.* at 197.

On the evening of March 1, 2008, Balk left Bahrain, moving to Jordan. On March 1, 2008 (a few hours before he left) and March 6, 2008, two articles appeared in Bahraini newspapers reporting that an unnamed professor at a private university had published a cartoon of the Prophet Mohammed on his personal website. While there is

4

no evidence in the record that Balk did any such thing, he has acknowledged that it was widely believed that the articles were referring to him. On March 18, 2008, NYIT administrators determined that Balk could not return to Bahrain to complete the remainder of his second teaching term and, around this time, Balk returned to New York. NYIT paid Balk for the remainder of his contract but did not renew his contract for a third term or offer Balk a position at any of its other campuses.

Balk alleges that he was forced to abandon his teaching position at NYIT Bahrain and that his contract was not renewed for a third term because of his race, religion, and national origin. Specifically, Balk alleges that NYIT discriminated against him by deferring to the discriminatory animus of its Muslim students and faculty members.

**2.**    *Discussion*

"We review *de novo* the district court's grant of summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in [his] favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). A district court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We ask whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On appeal, Balk

5

argues the district court erred in granting summary judgment on his discrimination, breach of contract, and fraud claims.

### A. Discrimination Claims

We generally analyze claims of race, religion, and national origin discrimination, where there is no direct or overt evidence of discriminatory conduct, under the *McDonnell Douglas* burden-shifting framework. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000). Under that framework, once the plaintiff demonstrates a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for its actions. *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010). If the defendant makes such a showing, "the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race and national origin." *Id.* The plaintiff must come forward with "not simply 'some evidence,' but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock*, 224 F.3d at 42 (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)).

Here, even assuming that Balk demonstrated a *prima facie* case of discrimination, NYIT provided legitimate, non-discriminatory reasons for its actions:  it

6

removed Balk from Bahrain because it had become unsafe for him to remain there, and it did not provide Balk with a new contract because there were no positions available for him in the United States. Balk did not present sufficient evidence to support a rational finding that NYIT's stated reasons were false, and that more likely than not discrimination was "the real reason" for its employment actions.

On the record before the district court, no reasonable jury could have found that NYIT's stated concern for Balk's safety was pretextual or that the real reason for the decision to remove him from Bahrain was discrimination. Balk himself expressed concern about his safety. Whether there was a basis for their accusations or not, students complained that Balk had used words with them that were "extremely rude, humiliating, disrespectful and full of clear racism." App. 175. Balk acknowledged using words that some certainly could have found offensive. *Id.* at 735, 741, 742. Again, whether they were accurate or not, articles were published reporting that a professor at a private university had engaged in blasphemous conduct, and Balk acknowledges that, although he was not named, he was widely believed to be the professor in question. As a reasonable jury could only find, these circumstances created an unsafe environment for Balk.[4]

---

[4] *See Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender or pension status."); *see also Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("To the extent that Waggoner's summary judgment evidence relates to his innocence of the sexual harassment charge, it is

7

Moreover, Balk has pointed to no evidence to suggest that NYIT played any role in the leaking of the student complaint to the newspapers or that it had any control over the publication of the articles.   In addition, the record demonstrated that, far from discriminating against white, non-Muslim Americans in Bahrain, NYIT actively recruited white, American faculty members of different religions to teach at its Bahrain campus.

Balk contends that NYIT discriminated against him "to satisfy the discriminatory animus of the customer base at NYIT Bahrain," referring apparently to Muslim students, NYIT administrators, and Infotec employees.   Pl.-Appellant Br. at 23-25.   In essence, Balk relies on the "customer preference" cases, *see, e.g., Joseph v. Owens & Minor Distrib., Inc.*, 5 F. Supp. 3d 295, 314 (S.D.N.Y. 2014) ("When a customer's reason for complaining about an employee is itself racially-motivated, an employer cannot rely on such complaints as being 'non-discriminatory' reasons for [its] adverse actions."); *Wigginess Inc. v. Fruchtman*, 482 F. Supp. 681, 692 (S.D.N.Y. 1979) ("Employers may not discriminate on the basis of their customers' preferences."), *aff'd*, 628 F.2d 1346 (2d Cir. 1980), or the "poisoning the well" theory of discrimination, *see, e.g., Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 410 (2d Cir.), *cert. denied*, 502 U.S. 964 (1991) (statements made by individuals with "substantial influence" over plaintiff's employment raise genuine issue

irrelevant.   He must, instead, produce evidence demonstrating that Hamilton or Phillips did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him on the basis of his age.").

of fact as to pretext); *Crader v. Concordia Coll.*, 724 F. Supp. 558, 564 (N.D. Ill. 1989) ("If that source [of input for employment decision] was in fact polluted by racial bias, that might be enough to poison the well of the [manager]'s decision even if *he* were wholly innocent of such a bias on his part.").   This reliance fails, for Balk has not presented sufficient evidence from which a reasonable jury could find that the students or others were motivated by discriminatory animus toward him, or that NYIT succumbed to any discriminatory animus.

Likewise, Balk did not present sufficient evidence to raise a genuine dispute of material fact for trial as to his claim that NYIT failed to place him in another position in the United States for discriminatory reasons.   NYIT presented substantial evidence that it had tried to find a position for Balk but no suitable position was available.   Balk did not present sufficient evidence to show this was pretextual.

Balk also argues that the district court erred in *sua sponte* granting summary judgment for NYIT on any claims of joint-employer liability for conduct by Infotec or its agents, including Hussein.   A court may grant summary judgment *sua sponte* if "the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried."   *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011).   Balk moved for summary judgment on his claims that NYIT was liable for discriminatory conduct by

9

Infotec and, therefore, Balk had a full and fair opportunity to present all evidence to support his claims.

Finally, Balk argues that Hussein was the ultimate decision-maker insofar as getting him out of Bahrain was concerned. Balk argues that, even if the evidence does not support a finding of joint-employer status, NYIT would be liable if Hussein engaged in discriminatory conduct. Balk has waived the right to convert his joint-employer argument into an agency argument. *See In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." (citation omitted)); *see also Guilino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 378 (2d Cir. 2006) (declining to broaden the joint-employer theory of liability and, instead, applying the common law of agency).

Even if the argument were not waived, Balk has not offered sufficient evidence to permit a jury to find that Hussein harbored discriminatory animus against non-Muslim Americans. Balk points to Hussein's February 25, 2008 email, where he stated that "I think [Balk] is lying, hence I gathered evidence which shows that he has been against Islam for quite a long time. All this information is present in his website. He has discriminated the students and staff for the past 2 years . . . . This guy has to be removed immediately from the country before they put him in jail." App. 1082. This email, however, does not show anti-American bias; rather, it shows that Hussein was

10

concerned about Balk's perceived attitude toward Islam, his conduct, and his continued well-being if he remained in Bahrain.

Accordingly, Balk did not present sufficient evidence of pretext.

**B.      *Breach of Contact Claims*

Under New York law, a breach of contract claim requires "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). A district court may dismiss a breach of contract claim on summary judgment where a plaintiff fails to identify any disputed issue of material fact with respect to damages. *Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 771 (S.D.N.Y. 2014).

Balk does not dispute the district court's finding that he received his entire annual compensation of $86,000. Accordingly, the contract was fully performed by NYIT until it expired according to its own terms on May 31, 2008. Balk's argument that the district court erred in failing to consider that Balk was denied insurance benefits and housing is without merit as the contract provided that Balk "will not receive any NYIT employee benefits," App. 172 ¶ 8, and that Balk would pay all of his expenses, housing and otherwise, out of his salary. NYIT cannot be liable for failing to provide Balk with other benefits because NYIT was not required to do so.

11

Balk's argument that NYIT breached a separate verbal agreement to extend his contract to a third term is similarly without merit. The evidence shows that Balk simply hoped he would receive a third contract, not that he was promised one. In fact, in an email dated March 11, 2008, Balk stated: "And since I have no statement of promise for the contract, I have no concrete avenue for defense." App. 340 ¶ 36.

### C. Fraud Claims

Balk alleges that NYIT conspired with Infotec to defraud him into leaving NYIT Bahrain. Under New York law, the elements of a fraud claim are: (1) misrepresentation or omission of a material fact; (2) made deliberately or knowingly; (3) with the intent to defraud; (4) reasonable reliance on the representation; and (5) pecuniary damages or loss. *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). To survive summary judgment, a plaintiff must show that a reasonable jury could find each element by clear and convincing evidence. *Id.* As discussed above, the indisputable evidence shows that Balk feared for his physical safety and, only hours after an article was published that increased these safety concerns, Balk left Bahrain. On this record, no reasonable juror could find, by clear and convincing evidence, that NYIT misrepresented or omitted material facts, deliberately or knowingly, with the intent to defraud Balk.

* * *

12

We have considered Balk's remaining arguments and find them to be

without merit.   Accordingly, we **AFFIRM** the opinions and orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13